UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-80709-CV-RUIZ
MAGISTRATE JUDGE REID

LEE MITCHELL JOHNSON,

Plaintiff,

v.

DEPUTY WILLIAMS,
et al.,

Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Before the Court is Plaintiff's *pro se* Second Amended Complaint under 42 U.S.C. § 1983. [ECF No. 10]. Plaintiff, a pretrial detainee, claims Deputy Williams slammed him "face first" against the wall, slapped his bare buttocks, and placed his finger onto, but not into, Plaintiff's exposed anus, threatening that he would allow inmates to rape Plaintiff. Deputy Tyson allegedly watched the incident.

This matter was referred to the Undersigned for consideration and report on dispositive matters pursuant to S.D. Fla. Admin. Order 2019-2. [ECF No. 2]. As set forth below, all claims should **PROCEED**.

## II. Allegations

On April 7, 2019, Plaintiff was arguing with Deputies Williams and Tyson. [ECF No. 10 at 7]. During this exchange, Plaintiff alerted them that there was no running water in his cell. [*Id.*]. In response, Deputy Williams entered Plaintiff's cell and stated, "Ain't no cameras[,] bitch. Get on the wall[,] cracker." [*Id.*]. At that point, as Plaintiff asserts, Deputy Williams "slammed" Plaintiff "against the wall face first." [*Id.*]. Deputy Williams then stated he was "above the law" and could do whatever he wanted to Plaintiff. [*Id.*].

According to Plaintiff, Deputy Williams pulled down his pants and boxers, slapped Plaintiff's "bare ass" three times, and "put his finger on [Plaintiff's] anus." [*Id.*]. Deputy Williams allegedly said he would "make" Plaintiff his "bitch" and further indicated that he would let inmates rape Plaintiff. [*Id.*]. Deputy Tyson, observing the incident from the doorway of Plaintiff's cell, blocked the exit and took no action to stop Deputy Williams's conduct. [*Id.*]. Plaintiff claims he was not a threat to the deputies and never resisted the force applied by Deputy Williams. [*Id.*].

Plaintiff claims Deputy Williams's force amounts to excessive force and that Deputy Tyson failed to intervene. [*Id.*]. For relief, Plaintiff seeks punitive damages in the amount of $50,000 against Deputy Williams and against Deputy Tyson in the amount of $20,000. [*Id.* at 9].

## III. Standard of Review

According to 28 U.S.C. § 1915 of the Prison Litigation Reform Act, which permits *in forma pauperis* (IFP) proceedings, it reads in pertinent part:

> (e)(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that -
>
> * * *
>
> (B) the action or appeal -
>
> * * *
>
> > (i) is frivolous or malicious;
> >
> > (ii) fails to state a claim on which relief may be granted; or
> >
> > (iii) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

Plaintiff is proceeding IFP. [ECF No. 6]. Thus, the Second Amended Complaint is subject to the screening requirements of 28 U.S.C. § 1915(e)(2). *See, e.g.*, *Farese v. Scherer*, 342 F.3d 1223, 1228 (11th Cir. 2003) (explaining this principle in a RICO suit); *Floyd v. City of Miami Beach*, 730 F. App'x 838, 841 (11th Cir. 2018) (applying this principle in a § 1983 context).

When determining whether a pleader has stated a claim upon which relief can be granted, factual allegations must be accepted as true, and legal conclusions are not entitled to that assumption. *See Jones v. Fla. Parole Comm'n*, 787 F.3d 1105,

1106-07 (11th Cir. 2015) (relying upon *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Further, while *pro se* filings are held to less stringent standards than pleadings drafted by attorneys, *see Haines*, 404 U.S. at 520-21, *pro se* filings must suggest the existence of "some factual support for a claim." *Jones*, 787 F.3d at 1107.

The assumed-as-true factual allegations must cross "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Whether a claim has facial plausibility is a context-specific inquiry, which is met if there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79.

## IV. Discussion

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under color of state law." *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).

A. <u>Excessive Force</u>

"Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to … convicted prisoners." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citation omitted).

4

The excessive force inquiry for pretrial detainees includes two separate state-of-mind questions:

> The first concerns the defendant's state of mind with respect to his physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world. The second question concerns the defendant's state of mind with respect to whether his use of force was "excessive."

*Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015) (emphasis in original omitted).

As to the first inquiry, "the defendant must possess a purposeful, knowing or possibly reckless state of mind[,]"accidental or negligent conduct will not suffice. *Id.* at 396.

As for the second question, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. This standard cannot be applied mechanically, and "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397.

A number of factors may bear on the reasonableness or unreasonableness of the force applied. *Id.* For example, courts may consider (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or limit the amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat

reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Id.* at 397. This is not an exhaustive list of potentially relevant factors. *Id.*

Here, based on Plaintiff's allegations, being slammed "face first" into a wall for no apparent reason permits an inference that force was applied deliberately, particularly in light of Deputy Williams's alleged remarks. Such force could be deemed objectively unreasonable because there would have been no need for force, a security problem would not have existed nor would a reasonable officer perceive such a risk, no effort to limit the amount of force appears to have been taken, and Plaintiff asserts he never resisted. Thus, that claim must proceed.

As for the separate claim of excessive force regarding Plaintiff's allegations that Deputy Williams hit him on his buttocks three times and placed his finger on his anus, that claim must also proceed. True, it is debatable whether this claim would proceed in an Eighth Amendment context. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (explaining force that is repugnant to the conscience of mankind may be enough even in the absence of a lack of *de minimis* use of force); *Sconiers v. Lockhart*, 946 F.3d 1256, 1267 (11th Cir. 2020) (indicating a penetrative act might be necessary to amount to unconstitutional force). But Plaintiff only needs to show that force was applied deliberately and that such force was objectively unreasonable. Plaintiffs assumed-as-true allegations permit an inference that there was no legitimate governmental purpose served by a guard purposefully slapping his

6

buttocks and pressing Plaintiff's anus. The lack of a legitimate governmental purpose is particularly reasonable in light of the threatening remarks the deputy allegedly made. Accordingly, both excessive force claims against Deputy Williams must proceed.

B. Failure to Intervene

"Even when an officer is not a participant in [applying] excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012). Of course, the non-intervening officer must actually be in a position to intervene. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008). Thus, "[i]nstances of force that occur within seconds do not place officers in a realistic position to intervene." *Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. 2018).

Plaintiff's allegations against Deputy Tyson indicate that Deputy Tyson had time and an opportunity to stop Deputy Williams's conduct at various points during the incident. Therefore, Plaintiff's failure to intervene claim against Deputy Tyson should proceed.

## V. Conclusions and Recommendations

Based on the foregoing, the two excessive force claims should **PROCEED** against Deputy Williams and the failure to intervene claim should also **PROCEED** against Deputy Tyson.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the Report. Failure to do so will bar a *de novo* determination by the District Court Judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See Thomas v. Arn,* 474 U.S. 140, 149 (1985).

Signed this 25th day of August, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Lee Mitchell Johnson
    0384240
    Palm Beach County Jail
    Inmate Mail/Parcels
    Post Office Box 24716
    West Palm Beach, FL 33416
    PRO SE